[Cite as *Yuhasz v. Yuhasz*, 2016-Ohio-2899.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STACY H. YUHASZ, | : | **O P I N I O N** |
| Petitioner-Appellant, | : | |
| - vs - | : | CASE NO. 2015-A-0054 |
| THOMAS R. YUHASZ, | : | |
| Petitioner-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Domestic Relations Division, Case No. 2004 DR 115.

Judgment: Affirmed.

*Thomas J. Simon,* 1105 Bridge Street, P.O. Box 3048, Ashtabula, OH 44005 (For Petitioner-Appellant).

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Petitioner-Appellee).

DIANE V. GRENDELL, J.

{¶1} Appellant, Stacy H. Yuhasz nka Senskey, appeals the September 1, 2015 Judgment of the Ashtabula County Court of Common Pleas, denying her Motion to Enforce Property Settlement and Motion for Spousal Support. The issue before this court is whether a provision in a separation agreement, providing that husband will pay wife a severance package if wife is involuntarily terminated from her employment, is satisfied where there is evidence that wife wished to terminate her employment at the

time she was fired and where it was subsequently discovered that wife had committed financial improprieties. For the following reasons, we affirm the judgment of the court below.

{¶2} On June 16, 2004, the Ashtabula County Court of Common Pleas granted Senskey and appellee, Thomas R. Yuhasz, a dissolution of marriage and adopted the parties' Separation Agreement. Article 9, Section E of the Agreement provided as follows:

> The Husband further guarantees that the Wife shall retain her full time job (40 hours per week) at Husband's business TYGBJY through her 65th birthday at the current rate of $20.00 per hour plus annual increases at least commensurate with the annual cost of living. * * * [I]n the event that the wife is terminated from her employment for any reason other than her own voluntary choice, the Husband shall pay Wife a severance package within six months of the date of termination in an amount equal to the amount she would have earned from termination until her 65th birthday at 40 hours per week at her hourly rate at time of termination plus 5% per year thereafter. If the Husband defaults in this provision it would again reopen the Court's jurisdiction on the issue of spousal support.

{¶3} On May 30, 2013, Senskey filed a Motion to Enforce Property Settlement and Motion for Spousal Support based on Yuhasz' violation of Article 9, Section E of the Separation Agreement.

{¶4} Hearings on Senskey's Motions were held on February 5, April 17, and June 26, 2014, before a magistrate of the court.

{¶5} On July 31, 2014, a Magistrate's Decision was issued.

{¶6} On August 13, 2014, Senskey filed Objections to Magistrate's Decision.

{¶7} A hearing on Senskey's Objections was held on July 29, 2015, before the trial court.

2

{¶8} On September 1, 2015, the trial court issued a Judgment Entry overruling the Objections and adopting the Magistrate's Decision. The court identified the determinative issue as "whether the wife quit her job voluntarily or was fired by the husband." The court resolved the issue as follows:

> The Court has reviewed the transcript and finds there was much conflicting evidence. On November 20, 2012, at the company office, Mr. Yuhasz overheard part of a conversation between Mrs. Senskey and a customer. An argument ensued over how customers were being treated and when they were being paid. It became very emotional, and the other employees described loud yelling and screaming by the parties. At the end of the day, Mrs. Senskey left and never returned to her company employment. The strongest evidence that Mrs. Senskey was fired are the statements Mr. Yuhasz made to others indicating that he fired her.

> The Court finds, in this case, due to the family relationships of the parties and witnesses, the very strong emotional displays, the economic impacts on the parties and the conflicting evidence, the Court must examine what the parties actually did rather than what they say they did.

> The evidence is clear Mrs. Senskey wanted to leave her position with the TYGBJY Company. The parties dissolved their marriage on June 16, 2004. Mrs. Senskey married Greg Senskey in August of 2009. She told her sons, Dakota and Derek, that she was worn down, wanted to move on, and did not want to work at the company any longer. Mrs. Senskey, during September 2011, had interviewed with Steve Palec for another job. Although that interview did not result in different employment, it substantiates that Mrs. Senskey was actively seeking other employment.

> The evidence also establishes that Mrs. Senskey prepared a newspaper advertisement for the hiring of her replacement. She participated in the interviews of various job applicants and had agreed to train her replacement. It was understood that after her replacement was trained by Mrs. Senskey, she would leave the company. Danny Aulizia, the general manager of the TYGBJY Company, testified Mrs. Senskey wanted to leave; that she was unhappy working there; and on November 20, 2012, she said "I want out of here. I'm done." Clearly, Mrs. Senskey was planning to leave her employment long before the November 20, 2012 incident occurred.

3

Credibility is an important issue in this case. It was directly addressed by the Magistrate. The Court finds that the Magistrate's findings of fact and the inferences and conclusions drawn therefrom are fully supported by competent, credible, and substantial evidence. The Court further finds that the Magistrate's conclusions of law are appropriate and in accordance with law.

{¶9} On September 23, 2015, Senskey filed her Notice of Appeal.

{¶10} On appeal, Senskey raises the following assignment of error:

{¶11} "[1.] The Trial Court erred in affirming the Magistrate's Decision to deny appellant's Motion to Enforce Property Settlement and Motion for Spousal Support."

{¶12} A trial court's decision to adopt, reject, or modify a magistrate's decision is reviewed under an abuse of discretion standard, the same standard applied to determinations regarding property division and spousal support. *Shivak v. Shivak*, 11th Dist. Trumbull No. 2014-T-0101, 2015-Ohio-5063, ¶ 10; *Hutchison v. Hutchison*, 11th Dist. Lake No. 2014-L-048, 2014-Ohio-5471, ¶ 14.

{¶13} Senskey's challenge of the lower court's judgment rests on several points: (1) "all evidence presented at the hearings and contained in the transcripts indicates Appellant was fired by Appellee"; (2) "Appellant agreed to give up substantial property settlement entitlements in exchange for her continued employment with the TYGBJY through her 65th birthday"; and (3) "the mere fact that Appellant may have been looking for other employment opportunities does not equate to her quitting her job." Appellant's brief at 9-10.

{¶14} The points raised by Senskey neither compel a decision in her favor nor render the trial court's adoption of the magistrate's decision unreasonable, arbitrary, or

4

unconscionable, i.e., an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶15}** As to what occurred on November 20, 2012, there is evidence to support a finding that Senskey quit as well as that she was fired, and it is not improbable that her termination was the product of mutual consent.

**{¶16}** According to Yuhasz, he and Senskey had been arguing for ten to fifteen minutes when it came to an end as follows:

> A.     She's leaving and she's getting Danny [Aulizia] to say, did you hear this? Yeah, she's done. She's been telling me for six months she's not going to work here no more * * *.
>
> Q.     Okay. Now, what was her last words to you?
>
> A.     I'm out of here.
>
> Q.     And what did you say to her?
>
> A.     You're done.

**{¶17}** Accordingly to Danny Aulizia, the only third party witness to the argument: "They got into an argument, and * * * it was heated at both ends. That's when I came in and Stacy [Senskey] * * * was right there looking right at me and * * * she goes, I'm done. And Tom [Yuhasz] goes, no, you're out of here. And Stacy goes, are you witnessing this? And I said, yes, I am."

**{¶18}** After the incident, Aulizia was uncertain about Senskey's employment status and whether she would be returning to work for the company in some other capacity.

5

{¶19} The trial court, acknowledging the conflicting testimony and the emotion of the moment, decided to focus on the parties' conduct before and after the November 20 incident in addition to what happened that day.

{¶20} Senskey properly characterizes her continued employment at TYGBJY as a significant part of the property settlement. Nonetheless, there was abundant evidence that she not only intended to leave the employ of TYGBJY but also had taken significant steps toward finding other employment and providing for her replacement. The parties' son, Dakota, testified that she told him a couple of months before the November incident that she did not want to work at the farm. The parties' other son, Derek, testified that during this same period of time she told him that the farm was going to hire someone new and that she "wanted to move on from there." Aulizia testified that it was his understanding that Senskey would be leaving after the new-hire was trained. Aulizia also arranged for Senskey to interview for employment with Steve Palec. This evidence stands in contradiction to Senskey's testimony that she never had any serious intention of leaving her employment and, if believed, reflects adversely on Senskey's credibility.

{¶21} Although it was not discussed by the trial court, the magistrate found that, "[e]ven if Mr. Yuhasz had wrongfully terminated Ms. Senskey on November 20, 2012, the information he learned subsequently about how she managed the accounts and made large cash unauthorized withdrawals justified a termination for good cause." On appeal, Senskey contests whether these withdrawals were unauthorized. The issue does not affect the outcome of the appeal. For present purposes it is sufficient to note that until the withdrawals were purportedly discovered, Yuhasz, Aulizia, Derek, and

Dakota all acknowledged that there was a possibility, or at least desire, to accommodate Senskey's continued employment in a different position.

{¶22} Lastly, Senskey claims that she was entitled to spousal support under Article 7 of the Separation Agreement, providing that the trial court would "retain jurisdiction of the issue of spousal support only in the event that the Husband fails to comply with the terms and conditions of the property settlement." As discussed above, the court properly found that Senskey was not terminated in violation of the terms and conditions of the property settlement.

{¶23} The sole assignment of error is without merit.

{¶24} For the foregoing reasons, the September 1, 2015 Judgment of the Ashtabula County Court of Common Pleas, denying Senskey's Motion to Enforce Property Settlement and Motion for Spousal Support, is affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.